UNITED STATES of America,

v.

Keith Brent DUNCAN, Defendant.

Criminal Action No. 4:11cr112.

United States District Court,
E.D. Virginia,
Newport News Division.

July 22, 2013.

**754**

Robert Edward Bradenham, II, United States Attorney's Office, Newport News, VA, for United States of America.

### MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

Before the Court is the Motion for Authorization to Administer Involuntary Medication to Defendant Keith Brent Duncan ("Defendant") to restore his competence to stand trial. Having reviewed parties' memoranda and heard oral arguments and testimony on the motion, this matter is now ripe for judicial disposition.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On December 13, 2011, an Eastern District of Virginia Grand Jury filed a Criminal Indictment against Defendant, charging him with Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(8).[1] Defendant is also subject to

---

1. 18 U.S.C. § 922(g)(8):
 (g) It shall be unlawful for any person—
 [...]
 (8) who is subject to a court order that—
 (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
 (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in

forfeiture of the Springfield 16 gauge double barrel shotgun (and related ammunition) at issue in the Indictment. The Defendant was arrested on February 22, 2012, and has been the custody of the United States since that date. On March 19, 2012, a United States Magistrate Judge ordered that the Defendant undergo examination to determine whether he may be suffering from a mental disease or defect under Rule 12.2 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Sections 4241(a) and (b).

On June 11, 2012, the Court held a hearing on Defendant's criminal responsibility and competency to stand trial, during which Defendant testified. The Government did not present any additional evidence at the hearing and the Court adopted psychological reports submitted by the Federal Bureau of Prisons' Metropolitan Correctional Center. These reports found that Defendant met the legal criteria for a mental disease, specifically Bipolar 1 Disorder, Severe with Psychotic Features, and that his mental illness impaired his ability to appreciate the wrongfulness of his conduct at the time of the alleged instant offense. A second report determined that Defendant is not competent to stand trial, as he does not possess a rational understanding of the proceedings against him, does not have the capacity to assist his counsel in his defense, and cannot make decisions regarding his legal strategy adequately.

Based on these medical conclusions, on June 11, 2012, the Court found that Defendant is suffering from a mental disease or defect that renders him unable to understand the nature and consequences of the proceedings against him or to properly assist in his defense. As such, the Court committed the Defendant to the custody of the Attorney General of the United States for a psychological or psychiatric evaluation and determination of the probability of future mental competency. On September 17, 2012, the staff at the Federal Medical Center in Butner, North Carolina ("Butner") diagnosed Defendant with Schizoaffective Disorder, Bipolar Type. Further, due to Defendant's Schizoaffective Disorder, Butner's staff determined "that involuntary medication is necessary to restore Mr. Duncan's competency to stand trial." On October 26, 2012, the Government filed its motion to forcibly medicate the Defendant in order to restore his mental competency to stand trial. On December 17, 2012, Butner filed a treatment plan for Defendant and reaffirmed its belief that involuntary medical treatment is necessary.

On February 4, 2013, the Court held a hearing to consider the Government's motion. Prior to the hearing, Defendant, through counsel, informed the Court and the Government that he wished to voluntarily submit to medical treatment so that he could be returned to competency and stand trial. The Court issued an order directing that Defendant be returned to Butner for treatment for not more than four months in accordance with his own wishes. However, the Court warned that

other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; [ ]
[ . . . ] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

if the Defendant failed to comply with his treatment plan, the Court would schedule a hearing on the Government's motion. Upon returning to Butner, the Defendant failed to comply with the course of treatment and the Court held a hearing on May 21, 2013, ("May 21st Hearing") to hear argument on the Government's motion. At the May 21st Hearing, the parties agreed to a series of stipulations. *See* ECF No. 37. Most of these stipulations outline the procedural facts indicated above. Further, the parties stipulated to the authenticity of all the relevant medical evaluations of the Defendant conducted by the Federal Bureau of Prisons staff. Most relevant to the matters before the Court is the information stipulated to regarding the Defendant's criminal history and the state protective order underlying the Government's Indictment. The parties stipulated as follows:

- On December 13, 2011, the defendant was indicted on a charge of possession of a firearm in violation of a protective order, in violation of 18 U.S.C. § 922(g)(8).

- In support of this charge, the evidence of the government would show that on September 25, 2011, the defendant approached the gate at Langley Air Force Base in an automobile, asking to speak with an intelligence officer about a matter of national security. Due to the defendant's erratic behavior, Langley officers requested permission to search the defendant's vehicle. A shotgun and a box of ammunition, were among the articles found in the vehicle.

- On February 22, 2011, the Superior Court for the County of Cobb, State of Georgia, issued a protective order in the case of *Bashama v. Keith B. Duncan*, Civil Action File No. 11-1-

1171–99, to remain in effect until February 22, 2012, and specifically finding that the petitioner qualified as a protected party pursuant to 18 U.S.C. § 922(g).

- The defendant's criminal history consists of [an] arrest on February 22, 2011 on charges of willful obstruction of law enforcement officers, false imprisonment, assault/family violence and theft. These offenses involved Ms. Bashama, and were dismissed. The defendant was arrested on October 24, 2011 on charges of stalking and aggravated stalking and was convicted of misdemeanor stalking. These offenses involved Robert Rose.

- On August 23, 2011, the Superior Court for the County of Cobb, State of Georgia, issued a protective order in the case of *Robert Rose v. Keith Duncan*, restraining Keith Duncan from contacting or following the petitioner for a period of 12 months from the date of the order.

## II. LEGAL STANDARDS

Through a series of cases, the United States Supreme Court ("Supreme Court") has established a framework to determine whether the "forced administration of antipsychotic drugs to render [a criminal defendant] competent to stand trial unconstitutionally deprive him of his 'liberty' to reject medical treatment?" *Sell v. United States*, 539 U.S. 166, 177, 123 S.Ct. 2174, 156 L.Ed.2d 197 (U.S.2003). In *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), the Supreme Court "recognized that an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Id.* at 178, 123 S.Ct. 2174 (quoting *Harper*, 494 U.S. at 221, 110 S.Ct.

1028). However, the Court also found that "the State's interest in administering medication was legitimate and important, and it held that the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* (internal quotations and citations omitted). As the Supreme Court summarized in *Sell,* its decision in *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) recognizes, "that, in principle, forced medication in order to render a defendant competent to stand trial for murder was constitutionally permissible." *Id.* at 179, 123 S.Ct. 2174. Considered together:

> These two cases, *Harper* and *Riggins,* indicate that the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.

*Id.* The Supreme Court has made clear that the circumstances justifying the intrusion of the liberty of an individual person implicit in the act of forcibility medicating a criminal defendant are "rare." *Id.*

■ In order to justify forcibly medicating a criminal defendant to achieve competency for trial, a district court must make a series of findings with respect to four factors identified by the Supreme Court in the *Sell* case ("Sell Factors") as well as consider relevant special circumstances. Further, the Fourth Circuit holds:

Because the involuntary administration of antipsychotic drugs for purposes of trial competence implicates both a person's significant liberty interest in avoiding unwanted drugs and the public's interest in prosecuting crimes, a higher standard of proof for entry of such an order is desirable. A higher standard—a standard greater than the preponderance-of-the-evidence standard but not as demanding as the beyond-a-reasonable-doubt standard—minimizes the risk of erroneous decisions in this important context.

*United States v. Bush,* 585 F.3d 806, 814 (4th Cir.2009) (internal citation omitted). Therefore, the Court must find that the Sell Factors weigh in favor of the Government by clear and convincing evidence. *Id.*

### A. Sell Factors

■ The Supreme Court holds that in order to forcibly medicate a defendant to restore competency to stand trial, the Government must establish the following, by clear and convincing evidence: (1) that an important governmental interest exists, such as bringing a defendant to trial who is charged with a serious crime; (2) that involuntary medication will significantly further the Government's interest; (3) that involuntary medication is necessary to further the Government's interest; and (4) that the use of any medicines are medically appropriate in light of the defendant's condition. *Sell,* 539 U.S. at 179, 123 S.Ct. 2174.

### 1. Important Governmental Interest

A court contemplating forcibly medicating a defendant must "find that important governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense

is a serious crime against the person or a serious crime against property." *Sell,* 539 U.S. at 180, 123 S.Ct. 2174. The Fourth Circuit has further elaborated on what constitutes a serious crime for the purpose of Sell Factors analysis, holding that "the central consideration when determining whether a particular crime is serious enough to satisfy this factor is the 'maximum penalty authorized by statute.'" *U.S. v. Chatmon,* 718 F.3d 369, 374 (4th Cir.2013) (citing *United States v. Evans,* 404 F.3d 227, 237 (4th Cir.2005)). In *United States v. White,* the Fourth Circuit found that "[w]ithout establishing a hard and fast rule, we have held that a crime is 'serious' for involuntary medication purposes where the defendant faced a ten-year maximum sentence for the charges against him." *United States v. White,* 620 F.3d 401, 410 (4th Cir.2010). However, the Fourth Circuit also discussed and did not "flatly reject[ ]" a guidelines sentencing approach as an alternative means to determining whether a crime is serious. *White,* 620 F.3d at 411 n. 7. Even using a guidelines sentencing approach, the Fourth Circuit still cautions that regardless of how much time a defendant actually would spend in prison, if convicted, "[t]here are other aspects to the government's interest that make it important to bring [defendants] to trial for the alleged criminal conduct," including conveying to the public the serious nature of the alleged conduct. *Bush,* 585 F.3d at 815 (internal citation omitted). However, the Fourth Circuit has tempered this view in more recent cases:

> In *Bush,* we also explained that 'the very fact that the government is prosecuting Bush for this conduct conveys a message about its seriousness and its consequences.' Although this is true, it is not a unique characteristic in this case, nor could it ever be a unique characteristic of any case of this type. It is instead a truism, applicable to any case

where the government seeks forcible medication: without a prosecution, there would be no case.

*White,* 620 F.3d at 413 (internal citation omitted).

In determining whether a crime is serious, the Supreme Court also direct district courts to consider special circumstances that "may lessen the importance of that interest. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill—and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *Sell,* 539 U.S. at 180, 123 S.Ct. 2174. The *Sell* Court also cites as a special circumstance the amount of time the Defendant has already spent in custody and the time served he would be credited for if convicted. *Id.* However, the Court has also made clear that by directing consideration of special circumstances:

> We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, *see* 18 U.S.C. § 3585(b)). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.

*Id.*

Additionally, the Fourth Circuit has clarified that the two enumerated special

circumstances in *Sell* do not constitute the full compendium of circumstances district courts can or should consider:

> We reject the government's implied assertion that our special circumstances analysis is limited to considering whether White is subject to civil commitment and whether she has been confined for a significant period of time. In *Sell,* the Supreme Court clearly stated that the inquiry is a fact-specific one: "[c]ourts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest." *Sell,* 539 U.S. at 180, 123 S.Ct. 2174. The Court then provided a nonexclusive list, as evidenced by its use of the term "for example" in the sentence immediately following its announcement that special circumstances may lessen the government's interest. *Id.* Further, we have already recognized the flexible nature of our special circumstances inquiry in *Evans,* where we explicitly stated that length of incarceration is not necessarily the only factor relevant to whether special circumstances undermine the government's interest.

*White,* 620 F.3d at 412 n. 9. As the Fourth Circuit references above, in *Evans,* 404 F.3d at 240, it made clear the special circumstances articulated in *Sell* are not "the only consideration relevant to whether special circumstances undermine the government's interest." Therefore, the Fourth Circuit decided that "the flexibility of the special circumstances determination may identify factors militating in favor of the government's interest in going forward with a prosecution even where there has been prolonged pretrial detention, and the analysis may also identify factors further undermining the government's interest." *White,* 620 F.3d at 413. With this in mind, the Fourth Circuit has noted that "the

district court [having] the option of imposing a period of supervised release as a factor bolstering the government's interest." *Id.*

### 2. Involuntary Medication Must Significantly Further the Government's Interest

A court contemplating forcibly medicating a defendant must also find that the administration of said medication will significantly further the government's interest. As the Supreme Court explains:

> [The district] court must conclude that involuntary medication will significantly further those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair.

*Sell,* 539 U.S. at 181, 123 S.Ct. 2174.

### 3. Involuntary Medication Must Be Necessary to Further the Government's Interest

■ A court contemplating forcibly medicating a defendant must also find that forcibly medicating a defendant is necessary to further the Government's interest:

> [The district] court must conclude that involuntary medication is necessary to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. *Cf.* Brief for American Psychological Association as Amicus Curiae 10–14 (nondrug therapies may be effective in restoring psychotic defendants to competence); but *cf.* Brief for American Psychiatric Association et

al. as *Amici Curiae* 13–22 (alternative treatments for psychosis commonly not as effective as medication). And the court must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods.

*Id.* The Fourth Circuit is clear that contained in *Sell* "is specific command that must be met before a district court may answer this inquiry in the affirmative: the court "must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power." " *U.S. v. Chatmon,* 718 F.3d 369, 375 (4th Cir.2013).

### 4. Use Of Drugs Is Medically Appropriate In Light Of The Defendant's Condition

Finally, a court contemplating forcibly medicating a defendant to restore competency must also find the usage of drugs is medically appropriate:

> [The district] must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition. The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success.

*Sell,* 539 U.S. at 181, 123 S.Ct. 2174. With these legal standards in mind, the Court now addresses the Government motion.[2]

## III. DISCUSSION

### A. Parties' Positions

 The Government asserts that that it has met all of the requirements of *Sell* and relevant Fourth Circuit precedent and the Court should authorize forcibly medicating the Defendant to restore his competency to stand trial. Citing the ten year maximum sentence associated with the sole count of the indictment against the Defendant, the Government argues that offense charged, Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(8), is a serious crime, thus rendering the government's interest in bringing the defendant to trial "important" under the *Sell* framework. The Government, based on Burner's evaluation reports, argues that involuntarily medicating the Defendant will significantly further the government's important interests to try the Defendant and that no alternatives means will be effective in achieving similar results. The Government also asserts that involuntary medication is necessary to further the its interests given that less intrusive alternatives are unlikely to substantially achieve the same results and no serious side effects would hinder the Defendant's ability to assist in his own defense. Finally, the Government argues that the forcibly use of medication is appropriate in light of the Defendant's condition.

---

**2.** In a supplemental filing with the Court, Defendant argues that because the Government held no prison administrative hearing to determine whether forced administration of medications under alternative rationales is warranted, the Court should not consider the Government's *Sell* Motion until said administrative hearing occurs. However, the Government makes clear in its response that based on medical reports from Butner, there are no alternative grounds to base involun-

tarily medicating the Defendant given that he is well adjusted in the mental health housing unit at the hospital and has no safety and personal care issues. The inapplicability of *Harper* was not contested at the May 21, 2013 hearing and the Court concludes that there are no alternative grounds for medicating Defendant. As such, the Court will address the substance of the Government's request under *Sell v. United States.*

The Defendant argues that the Government has failed to meet its burden with respect to all four *Sell* Factors. First, the Defendant asserts that no important government interest justifies violating his constitutional liberties. Defendant admits that under the Fourth Circuit's statutory maximum approach to the serious crime determination, the ten year maximum sentence associated with the crime of Unlawful Possession of a Firearm likely renders the crime serious. However, Defendant urges the Court to consider the guidelines sentencing range as a more accurate measure seriousness under *Sell*. Under this approach and Defendant's calculations, he is eligible to serve, if convicted, between eight and twenty-one months in prison. Given the limited amount of time Defendant will be mandated to serve under the Sentencing Guidelines, he argues that his offense is not serious for *Sell* purposes.

In addition, Defendant argues that even if the maximum sentence associated with the charge against him is the most appropriate decisional metric for seriousness under *Sell*, a series of special circumstances mitigate the Government's important interest. First, the Defendant argues, using the Federal Bureau of Prisons' Criminal Responsibility Evaluation as support, that he has a strong likelihood of successfully showing that he was criminally insane at the time he allegedly committed the crime charged. The BOP report indicates that "[r]egarding the issue of Criminal Responsibility [sic] at the time of the alleged offense, it is therefore the opinion of this evaluator, with a reasonable degree of psychological certainty, Mr. Duncan's mental illness impaired his ability to appreciate the wrongfulness of his conduct at the time of his actions." *See* Criminal Responsibility Evaluation, ECF No. 12, 18, May 22, 2012. The Defendant believes his lack of culpable mental state at the time he allegedly committed the crime charged substantially mitigates the Government's important interest in bring him to trial since it won't be able to secure a conviction against him.

Second, the Defendant cites the significant amount of time he has spent incarcerated as mitigating the Government's important governmental interest. Defendant has been in the custody of the United States for approximately one year and three months. Given that Defendant has been in custody for nearly as long as the lower end of the applicable sentencing guideline range, he argues that if convicted, he will likely spend a limited amount of time, if any, in prison. Defendant argues that the Government important interests have been substantially mitigated, weighing against forcibly medicating the Defendant. Third, the Defendant argues that the Government's interest in protecting the public from further harm is mitigated by Defendant's current circumstances. Even if the Court does not grant the Government's motion, Defendant argues that he will likely remain in confinement for a significant period of time for mental health treatment. Defendant also asserts that he will be prohibited from ever obtaining or owning a firearm again due to his commitment to a prison mental hospital under 18 U.S.C. § 922(g)(4).[3] For the reasons stated above, Defendant argues that the charge against him is not serious enough

---

3. 18 USCS § 922(g)(4):

 (g) It shall be unlawful for any person—

 [...]

 (4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

[...] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

under *Sell* to warrant forcibly medicating him.

The Defendant also argues that the Government has not shown that involuntarily medicating him will be substantially likely to render him competent to stand trial or that occurrences of adverse side effects are unlikely (Sell Factor II). The Defendant also argues that the Government has failed to meet its burden to show that forced medicating him is necessary and the least intrusive option available to restore competency (Sell Factor III). Finally, the Defendant asserts that again the Government has failed to meet its burden by showing that the forcible medicating of the Defendant is medically appropriate for him.

## B. Sell Factor I

As the Supreme Court directs, this Court must find, by clear and convincing evidence, that an important governmental interest exists, such as bringing a defendant to trial that is charged with a serious crime. The fulcrum of this factor is whether the charged crime in the Defendant's case is serious enough to warrant the constitutional intrusion implicated by forcibly medicating a person with antipsychotic drugs. For the reasons set forth below, the Court finds that the Government has failed to meet its burden, by clear and convincing evidence. While the charged offense is by no means trivial or unworthy of prosecution, given the facts and circumstances of this specific case, the charge does not to warrant the forced introduction of serious medications into the body against an adult person's will.

### 1. Important Governmental Interests Are Initially at Stake

Both the Government and the Defendant acknowledge that under Fourth Circuit dictates that "[w]ithout establishing a hard and fast rule, we have held that a crime is 'serious' for involuntary medication purposes where the defendant faced a ten-year maximum sentence for the charges against him." *White*, 620 F.3d at 410. It is undisputed that the crime charged in this case, Unlawful Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(8), has a maximum sentence of ten years imprisonment. Although the Court has some doubts that the maximum sentence associated with a charge is the proper measure of seriousness for *Sell* purposes, based on the Fourth Circuit's pronouncement in *White*, the Defendant has been charged with a serious crime under *Sell*. Given that the crime is serious under *Sell*, the Government certainly has a initial important governmental interest at stake in bringing the Defendant to trial.

### 2. Special Circumstances Substantially Mitigate Government's Interests

Although the maximum sentence of the offense charged establishes whether a crime is serious, there are additional considerations to weigh before the Court can conclude the Government satisfied this factor. Specifically, the Supreme Court requires that a district court consider any special circumstances that may mitigate or enhance the government's interests in forcibly medicating a defendant. There are four special circumstances before the Court that weigh on the potency of the Government's important interests: (1) the amount of time the Defendant has already spent in federal custody; (2) the likelihood that the Defendant will face significant time in federal custody absent a formal trial and conviction; (3) the likely success of an insanity defense; and (4) the likelihood that the Defendant will be placed on supervised release if convicted of the charge against him. The Court will ad-

dress each of these special circumstances in turn and their effect on the potency of the government important interests.

### a. Special Circumstances 1: Time Already In Custody

How long a defendant has already spent in federal custody as compared to how much time the defendant is reasonably likely to spend in prison is a special circumstance that may mitigate, but not totally undermine, *see Sell*, 539 U.S. at 180, 123 S.Ct. 2174, the Government's important interests. The Fourth Circuit instructs that when considering time already spent incarcerated against the defendant's "likely sentence" for *Sell* purposes, the "likely sentence" is determined "by actually calculating the defendant's likely sentence vis-a-vis the advisory sentencing guidelines." *White*, 620 F.3d at 415. Further, the Fourth Circuit notes that the time already spent in federal custody must be "significant" to mitigate the Government's important interests. *White*, 620 F.3d at 414. "The operative word here is 'significant.' To determine if [a criminal defendant] has been in custody "a significant amount of time" as compared to her likely sentence, [the district court] must calculate [the criminal defendant's] time served, her likely sentence, and then ask whether the former is significant in light of the latter." *Id.* (citation omitted).

Explaining the operation of 18 U.S.C. § 3585(b)(2), the Fourth Circuit also notes that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time she has spent in official detention prior to the date the sentence commences, as long as it was served for the same offense and has not already been credited." *Id.* Further, the *White* Court, also allows for consideration of the time it will take the Defendant to be restored to competency while continuing to be in pre-

trial and presentencing custody as well as how long appeals the Defendant or the Government will take in the event of an adverse ruling. *Id.* Given the treatment plan the Government's experts outlined, the Court finds that a reasonable approximation of the time it would take to restore Defendant's competence to be six (6) months.

Moreover, the adverse party to the Court's ruling today will likely appeal to the Fourth Circuit for review of the Court's decision. The Court reasonably estimates that it would likely take at least six (6) months for Fourth Circuit to review this order. If the adverse party does not prevail in that appeal, the Fourth Circuit notes that said party would be "entitled to move for en banc rehearing by this court and to file a petition for certiorari to the Supreme Court. These proceedings could persist for many months, however, and even assuming quick and consistent denials, such proceedings would cause [the defendant] to remain detained for at least an additional six months." *Id.* Taken together, the Court finds that a reasonable approximation of the time it would take the adverse party to this order to exhaust its appeals to be twelve (12) months.

Added together, the Court estimates that the Defendant will be held for an additional eighteen months in order to restore him to competency and to permit the adverse party to this ruling to exhaust its appeals. As such, inclusive of any time the Defendant has already spent in custody, the Court adds an additional 18 months in consideration of the time he will likely spend in custody prior to trial and sentencing. The Defendant has been in actual custody for approximately sixteen months. Including the time anticipated it will take to restore the Defendant to competency and appeals, for *Sell* purposes, Defendant will be considered held prior to sentencing

and likely credited for time served for twenty-eight months. Finally, the Fourth Circuit in *White* notes that:

> [If a criminal defendant] were ultimately tried and convicted, and then sentenced to a term of imprisonment, she would be entitled to good time credits for each year that she has served, shortening her overall time actually served. "Federal sentencing law permits . . . authorities to award prisoners credit against prison time as a reward for good behavior." *Barber v. Thomas*, 560 U.S. 474, 130 S.Ct. 2499, 2502, 177 L.Ed.2d 1 (2010) (citing 18 U.S.C. § 3624(b)). The Bureau of Prisons determines good time credits based on each year that a defendant actually serves. *Id.* at 2502–03 (holding lawful the Bureau of Prisons' method for calculating good time credit based on time served instead of the length of the sentence imposed).

*White*, 620 F.3d at 414–415. The Fourth Circuit in *White* credited the Defendant in that case with good behavior credits while engaging in *Sell* Factor analysis and this Court will do the same. Based on *Barber* and 18 18 U.S.C. § 3624(b), Defendant would be entitled to approximately 108 days credit for good behavior or 2.3 months. This increases Defendants time served from 28 months to a total of 30.3 months of time (deemed) served.

Under U.S.S.G. 2K2.1(a)(6), Defendant's Base Offense Level is 14. Based on the stipulations of the parties, the record indicates that Defendant has a Criminal History Category of I. Defendant's estimated guidelines range would be 15–21 months. Assuming Defendant received the maximum amount of acceptance of responsibility points, his Base Offense Level would be 11 and his estimated guideline range would be 8–14 months. Given that the burden is upon the Defendant to show that acceptance of responsibility points should be granted to him at sentencing, the Court will assume for *Sell* purposes that the relevant guideline range for seriousness analysis is 15–21 months.

The Defendant, if convicted, is highly unlikely to be sentenced to more than approximately 15–21 months, and because he will be deemed to have served 30.3 months before ever being able to prosecute the Defendant, the Defendant has "already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, *see* 18 U.S.C. § 3585(b))." *Sell*, 539 U.S. at 180, 123 S.Ct. 2174. Certainly by the time the Government prosecutes the Defendant, his pretrial detention and likely good time credits would exceed 30.3 months, which would be a significantly longer period of time in presentence detention than his likely sentence of 15 to 21 months. Although the Fourth Circuit has "not yet defined that amount or percentage of time served that we require for a defendant to satisfy the "significant" standard discussed in *Sell*," *White*, 620 F.3d at 418, given that Defendant will spend more time in presentence detention than the maximum end of his likely sentencing guidelines range, the Court finds that amount of time to be significant under the Supreme Court and the Fourth Circuit's view of *Sell's* "significant" standard. Accordingly, the Court finds that the Government's interests have been substantially, if not completely, mitigated by the amount of time the Defendant has already spent in custody and will likely spend in custody prior to trial and sentencing.[4]

---

4. The Court recognizes that "[t]here are other aspects to the government's interest that make it important to bring [defendants] to trial for the alleged criminal conduct," including conveying to the public the serious nature of the alleged conduct. *Bush*, 585

### b. Special Circumstances 2: Likelihood of Future Confinement

■ Whether the Defendant's unwillingness to take medications to restore competency voluntarily would lead to future confinement is a special circumstance *Sell* dictates the Court should evaluate in making a serious offense determination. While *Sell* requires district courts to make a range of approximate and reasonable determinations when undertaking necessary analysis, the Court simply does not know if the Defendant will be subject to further confinement by the United States nor does it wish to speculate in light of a potential proceeding under 18 U.S.C. § 4264. The Court simply notes at this time that it is highly likely that the Government will seek to further detain the Defendant under the authorities available to it if the Court denies its motion. Such further confinement could reduce the harm to the public that the Defendant may pose and provide an alternative vindication of the Government's interests that does not require the forcible medicating of the Defendant. Given the uncertainty of the likelihood of future confinement, but its distinct possibility, the Court finds that this special circumstance mitigates the Government's important interests.

### c. Special Circumstances 3: Likely Successful Insanity Defense

The Defendant argues that although *Sell* does not specifically identify it as a special circumstance that the Court should consider, the likely success of the Defendant's insanity defense significantly mitigates the Government's interest. The United States Court of Appeals for the Tenth Circuit considered the likelihood of the defendant's insanity defense when resolving whether *Sell* should be applied and determined that:

> To be sure, regardless of confinement there is an important governmental interest in an adjudication regarding guilt. But disposition of the criminal charge against Defendant may well not produce such a result. As defense counsel pointed out to the magistrate judge, not only has a defense expert concluded that Defendant was entitled to an insanity defense, but the Bureau of Prisons evaluation was the same (although it recommended further evaluation if Defendant became competent to stand trial).

*United States v. Morrison,* 415 F.3d 1180, 1186 (10th Cir.2005). The United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") also considered this issue:

> There is one other circumstance that we should consider before reaching a final conclusion on this point. It seems reasonable to conclude from the record that Ruiz was inclined to commit this offense at least in part by his mental condition, his Delusional Disorder, grandiose type. In some cases, that the offense was the result of a mental disorder of this type might well render it less important that the government prosecute the particular defendant. For example, it may be less important where, as here, the crime is neither against persons nor property.

F.3d at 815 (internal citation omitted). However, "[a]lthough this is true, it is not a unique characteristic in this case, nor could it ever be a unique characteristic of any case of this type. It is instead a truism, applicable to any case where the government seeks forcible medication[.]" *White,* 620 F.3d at 413 (citation omitted). The Court believes that the Government's interest in conveying the serious nature of the alleged conduct has been sufficient satisfied by more than 16 months of federal criminal proceedings on this matter and that said interest is not particularly unique or pressing given the offense charged.

*United States v. Ruiz–Gaxiola*, 623 F.3d 684, 695 (9th Cir.2010). Although the Ninth Circuit considered the effect of a successful insanity defense on the government's important interests, it did point out some relevant concerns with such an approach:

It is also important, however, that Ruiz may, as a result of his mental condition, repeat his offense if he continues to believe that God wants him to be in the United States, as he apparently thought when he last entered unlawfully. Whether prosecution of such an individual remains important under these circumstances is a question that we hesitate to answer now. We will assume, however, for purposes of Ruiz's case that his prosecution would serve an important governmental interest, notwithstanding that the principal cause of his conduct was his mental disorder, and thus that the district court did not err as a matter of law with respect to the first Sell factor.

*Id.* Some of the same concerns implicated in *Ruiz–Gaxiola* in considering a defendant's insanity defense against the Government's interests are present in the case before the Court. The Government is also right that some of the most recent and tragic mass gun violence crimes have involved the mentally ill. However, no support has been offered to the Court that *Sell* was implicated in either of the examples the Government cited. The Government's interests in prosecuting the defendants in those cases, particularly in light of the lengthy sentences accompanying criminal offense conduct involving mass murder on an unprecedented scale are, without question, great. The Government cannot, however, argue successfully that its interests in this case are in any way similar to the United States' interests (or the interests of relevant local prosecutors) in the Arizona or Colorado mass shooting cases.

Finally, the Court notes one final concern the Fourth Circuit shared in *White:*

Likely sentence aside, we note that our entire analysis presumes that White will be found guilty. Of course, this assumption belies our judicial system's fundamental and critical presumption of innocence. Flouting such a seminal aspect of our law is particularly troubling considering that the government must show that important government interests are at stake in prosecuting White, and they must show it via clear and convincing evidence. Our assumption, although necessary to proceed with this analysis, is particularly unsettling in light of our recent precedent in [*U.S. v.*] *Evans,* [404 F.3d 227 (4th Cir.2005) ] where we permitted the forcible medication of Evans, a schizophrenic, for the purpose of standing trial, *United States v. Evans,* 199 Fed.Appx. 290, [291], 2006 WL 2604843 at *1 (4th Cir.2006), and separate juries of Evans's peers found him not guilty of threatening to kill a federal judge and of assault on a federal employee. Judgment of Acquittal, at 1, *United States v. Evans,* No. 1:07CR00043 (W.D.Va. Nov. 15, 2007). Thus, although we have estimated White's likely sentence to be 42–51 months, there is some possibility that she would be found not guilty and that the entirety of her pre-trial detention will remain uncredited time.

*White,* 620 F.3d at 418. By not considering the possibility that a jury could find the Defendant not guilty, either because it finds the Government did not meet its burden at trial or because the Defendant was insane at the time, the Defendant might not get any credit for the time he spent in pretrial detention.

In conclusion, the mere fact that a defendant has a potentially successful insanity defense would not totally mitigate the

government's important interests. However, considered with other special circumstances and the fact that the Government's own experts believe the Defendant lacked the *mens rea* necessary to be convicted of the offense conduct charged, the Court finds that this special circumstance mitigates the government's important interests.

### d. Special Circumstances 4: Placement on Supervised Release

As the Fourth Circuit has indicated, there are special circumstances which can further bolster the Government's important interests under *Sell* analysis, rather than weaken them. In *Bush,* the Fourth Circuit determined that "that the government's interest in prosecuting a mentally incompetent individual was not defeated when the defendant spent sufficient time in pretrial custody to significantly cover any reasonably anticipated prison sentence because 'a conviction may subject Bush to a period of supervised release, *see* 18 U.S.C. § 3583, which would help ensure that she is not released into the public without appropriate monitoring.'" *White,* 620 F.3d at 418 (quoting *Bush,* 585 F.3d at 815). The Defendant has been charged with a Class C Felony, authorizing a term of supervised release of not more than three years. *See* 18 U.S.C. § 3583. However, in *White,* a later decided case, the Fourth Circuit found that:

> We do not discern that the possibility of supervised release is sufficient to trump the special circumstances in this case. As we have mentioned, in both *Evans* and in *Bush,* the defendants were charged with threatening to kill a federal judge. Although the crimes in this case are certainly serious [conspiracy to commit credit card fraud, credit card

fraud, and aggravated identity theft], they are not of the sort at issue in our precedents.

*Id.* It is clear that the crime charged in this case, Unlawful Possession of a Firearm, is of a different nature than those charged in *White.* However, the offense charged is, at its core, nonviolent, although the circumstances of the Defendant's case indicated the possibility of violent intent in his actions. When comparing the gravity of the charged conduct in *Bush* and *Evans,* the Court believes *White* is more applicable. The Defendant cannot lawfully possess or purchase a firearm after being held in a mental institution, a factor the Fourth Circuit in *White* considered, *see* 620 F.3d at 413, 420, and should the Defendant commit another crime in the future, he "may be prosecuted, whether or not she is on supervised release." *Id.* at 418. Further, the Court hopes, at the Fourth Circuit did, that the Defendant's "family and friends, and the wide array of governmental and private human services agencies, not only the criminal justice agencies of government, can and ought to be counted on to address" his ongoing mental health needs. *Id.* The Court does not believe that the potential placement of the Defendant on supervised release strengthens the Government's interest in light of the nature of the offense charged and the previously identified special circumstances mitigating the Government's interests.

## IV. CONCLUSION

For the reasons stated above, the Government has not shown by clear and convincing evidence that it has important governmental interests at stake warranting the severe constitutional intrusion requested.[5] Because the Government has failed to meet its burden on Factor I and *Sell*

---

**5.** The Court also notes that the "maximum sentence approach" to the question of seriousness under *Sell* is not the only way of calculating seriousness under *Sell*. The Fourth

requires all four of the factors identified by the Supreme Court to be met before forcibly medicating a Defendant is permitted, the Court will not conduct a detailed analysis of the other Sell Factors. The Government's Motion for Authorization to Administer Involuntary Medication to Defendant Keith Brent Duncan to restore his competence to stand trial is **DENIED.**

The Defendant is currently being held under 18 U.S.C. § 4241(d). Since the Court has found that Defendant is not competent to stand trial currently and the Court cannot order his forcibly medicating to restore him to competency, additional proceedings will be necessary to determine the next course of action. The Government and the Defendant are **ORDERED WITHIN FORTY-FIVE (45) DAYS** to file any relevant motions to further the disposition of this case. Until that time, the Defendant is **ORDERED** to remain in the custody of the Federal Bureau of Prisons under psychiatric care.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for the Defendant, the United States Attorney, and Federal Bureau of Prisons.

**IT IS SO ORDERED.**

Circuit also discussed and did not "flatly reject[ ]" a guidelines sentencing approach as an alternative means to determining whether a crime is serious:

> In contrast to our preference of looking to the statutorily-authorized maximum sentence in determining whether a crime is 'serious,' see [*United States v. Evans*, 404 F.3d 227, 237–38 (4th Cir.2005) ], other circuits have not expressed such a preference but have recognized that the federal sentencing guidelines also provide a reasonable metric by which the seriousness determination may be made. *See United States v. Valenzuela–Puentes*, 479 F.3d 1220, 1226 (10th Cir.2007) (reasoning that "[w]hether a crime is 'serious' relates to the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged," and analyzing seriousness in light of the statutory maximum as well as the likely guideline sentence); [*United States v. Gomes*, 387 F.3d 157, 160 (2d Cir.2004) ] (describing "the seriousness of the crime and [the defendant's] perceived dangerousness to society [as] evident from the sub-

stantial sentence [the defendant] faces if convicted"), see also *Developments in the Law—The Law of Mental Illness: Sell v. United States: Forcibly Medicating the Mentally Ill to Stand Trial*, 121 Harv. L.Rev. 1121, 1127 (2008) [hereinafter Developments in Mental Illness Law] ("While the sentence length is a reasonable consideration for determining whether a defendant-protective right should apply, it is a less useful signal of whether there is a serious state interest in seeing a defendant brought to trial. Even when the defendant faces little or no jail time, the state may still have an important interest in bringing him to trial, for instance in symbolic prosecutions of high-profile defendants.").

*White*, 620 F.3d at 411 n. 7. Given that the Defendant's sentencing guidelines range is 15–21 months and the previously identified special circumstances mitigating any interests the government may have, the Court concludes that under this approach, the Government has also failed to show, by clear and convincing evidence, that it has important interests warranting the forced medicating of the Defendant.