**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-4725**

─────────────

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

FRANK CHATMON,

          Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:10-cr-00477-CMH-7)

─────────────

Argued:  May 15, 2013          Decided:  June 10, 2013

─────────────

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

─────────────

Vacated and remanded by published opinion.  Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Shedd joined.

─────────────

**ARGUED**:  Charles Burnham, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant.  Lisa Owings, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF**:  Eugene V. Gorokhov, Ziran Zhang, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant.  Neil H. MacBride, United States Attorney, Sean P. Tonolli, Assistant United States Attorney, Scott B. Nussbum, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

─────────────

WILKINSON, Circuit Judge:

After his indictment for conspiracy to distribute crack cocaine and heroin, appellant Frank Chatmon was diagnosed with paranoid schizophrenia and deemed incompetent to stand trial. The government then filed a motion seeking permission to forcibly medicate Chatmon in order to restore him to competency, which the district court granted.

In doing so, the district court purported to apply the standard mandated in Sell v. United States, 539 U.S. 166, 181 (2003). That standard permits involuntary medication for trial competency purposes if, inter alia, "less intrusive treatments are unlikely to achieve substantially the same results." Id. The district court found this criterion satisfied, summarily stating that "involuntary drugging [is] necessary because there is no less intrusive means shown to be available." In reaching that conclusion, however, the court did not mention or analyze any of the less intrusive alternatives suggested by the Supreme Court in Sell or by Chatmon himself. Because careful findings concerning the availability of less intrusive means are necessary to vindicate the Supreme Court's admonition that forcible medication motions should be carefully scrutinized due to their impact on personal liberty, see id. at 180-81, we vacate the district court's order and remand for further proceedings.

2

In December 2010, Chatmon was arrested and charged with conspiracy to distribute 280 grams or more of crack cocaine and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Before he could be tried on these charges, Chatmon's attorney expressed concern about his psychological condition, declaring to the district court that Chatmon's "mental state has deteriorated to the point where I feel he doesn't understand what's going on anymore." Chatmon's attorney thus filed a motion seeking a formal competency evaluation under 18 U.S.C. § 4241(a).

The district court granted the motion and ordered that Chatmon be evaluated at the Butner Federal Medical Center in North Carolina. Pursuant to that order, Chatmon was transferred to Butner from his jail cell in Alexandria, Virginia for evaluation by a staff psychologist in May and June 2011. The psychologist's report diagnosed Chatmon with "Schizophrenia, Paranoid Type" and described several of his symptoms, including the fact that he heard voices in his head and his beliefs that a satellite was attached to his brain and that his thoughts were being manipulated via remote control. The report concluded with the opinion that Chatmon suffers from a mental disease that

3

renders him "unable to understand the nature and consequences of the proceedings against him or assist counsel in his defense."

Based on these unchallenged findings, the district court deemed Chatmon incompetent to stand trial and ordered that he be returned to Butner for hospitalization and treatment to determine whether he might be restored to competency such that the criminal proceedings could go forward. See 18 U.S.C. § 4241(d). Chatmon was accordingly transferred back to Butner for a competency restoration evaluation in September 2011.

Upon his return to Butner, Chatmon was placed in the facility's Restrictive Movement Unit ("RMU"), a unit in which individuals are held in solitary confinement in cells for all but one hour of the day. Chatmon was housed in the RMU during the entire period in which his competency restoration evaluation was performed. That evaluation was conducted by three Butner employees: Samantha DiMisa, a psychology intern who was Chatmon's primary evaluator; Dr. Angela Weaver, a staff psychologist who supervised DiMisa; and Dr. Robert Lucking, a staff psychiatrist who interviewed Chatmon once to discuss antipsychotic medication. Together, the three produced a report on December 9, 2011. The report confirmed Chatmon's initial diagnosis of paranoid schizophrenia and identified symptoms such as paranoid ideation, auditory hallucinations, delusional beliefs, hostility, and tangential conversation. The report

4

also observed that Chatmon "denied having a mental illness and would not consent to treatment with psychotropic medication." Finally, the report expressed the evaluators' shared opinion that although Chatmon remained incompetent for trial, there is a "substantial probability that Mr. Chatmon's competency can be restored with a period of treatment with haloperidol decanoate," a type of antipsychotic medication.

On December 20, 2011 (eleven days after Chatmon's competency restoration report had been completed but before it had been submitted to the parties or the district court), Chatmon was transferred from the RMU to an open population unit within Butner where he was able to move freely in and out of his cell and interact with other inmates. Chatmon had previously made multiple requests to be transferred into such a unit, but each had been rejected. According to DiMisa, the reasons for allowing the transfer were that Chatmon had begun to show "greater engagement" with Butner staff members and that he had completed paperwork that he had previously refused to sign.

Chatmon demonstrated notable improvement in his behavior while in the open unit. DiMisa testified that when she met with him two weeks after his transfer, on January 5, 2012, Chatmon was more responsive to her redirection during conversation, visited the library and exercised regularly, had a good relationship with his roommate, and expressed the desire to take

a GED class and work in the kitchen. In DiMisa's opinion, Chatmon had "adjusted well when transferred to the open population." DiMisa also noted, however, that "just because someone becomes better able to manage their behavior does not necessarily indicate that [they are] competent" to stand trial. Still, notwithstanding Chatmon's progress, Butner staff did not conduct any additional evaluation of his competency and instead submitted the December 9, 2011 report to the parties and the district court on January 10, 2012.

B.

Based on the findings in the December report, the government filed a motion for permission to forcibly medicate Chatmon in February 2012. The district court held a hearing on the motion on August 29.

During the hearing, the district court began its analysis by identifying the four-part standard provided by Sell v. United States, 539 U.S. 166 (2003), for determining whether the government may involuntarily medicate a defendant in order to restore him to competency for trial.[1] As relevant to the two

---

[1] The government has made no contention that Chatmon is dangerous to others, which would remove this case from the Sell framework discussed herein. See 539 U.S. at 181-82 (discussing Washington v. Harper, 494 U.S. 210, 225-26 (1990), which recognized the government's important interest in medicating prisoners who pose a danger to themselves or to others).

6

elements at issue in this appeal, the court found first that the government had shown an important interest in medicating Chatmon because he had been charged with "one of the most serious offenses that can be committed," a drug offense punishable by a term of up to life in prison. See id. at 180. Second, the court stated that "involuntary drugging would be necessary because there is no less intrusive means shown to be available." See id. at 181. In reaching that conclusion, however, the district court did not address a particular alternative required by Sell: "a court order to the defendant backed by the contempt power." Id. Nor did the court discuss two less intrusive treatments proposed by Chatmon: group therapy and permitting Chatmon to remain in an open unit rather than solitary confinement.[2] The court nonetheless issued an order permitting the government to medicate Chatmon against his will, which Chatmon now appeals.

## II.

The question of when the government may involuntarily administer psychotropic drugs to a defendant for the purpose of

---

[2] According to Chatmon's counsel, after Chatmon's competency restoration evaluation was completed (and after he had made progress while being housed in Butner's open unit), Chatmon was returned to jail in Alexandria and placed in solitary confinement, where his mental health again deteriorated.

rendering him competent to stand trial entails a difficult balance between the defendant's interest in refusing mind-altering medication and society's interest in bringing the accused to trial. The Supreme Court recognized the weighty concerns on both sides of this balance in Sell, noting that while individual defendants possess a "'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs,'" so too does the government possess an "important" interest in "protect[ing] through application of the criminal law the basic human need for security." 539 U.S. at 178, 180 (quoting Washington v. Harper, 494 U.S. 210, 221 (1990)).

Our own cases have conveyed the same point. In United States v. White, for example, we characterized recourse to forced medication as a "drastic resort" that, if allowed to become "routine," could threaten an elementary "imperative of individual liberty." 620 F.3d 401, 422 (4th Cir. 2010). We also acknowledged, however, that "when an individual is alleged to have committed a serious crime," the individual may in some cases "forfeit[] her liberty interest . . . to the extent necessary for the government to bring her to trial." Id. at 409.

The crux of the matter, then, is how to reconcile these competing individual and societal interests so as to know which cases warrant the serious intervention of forced medication and

8

which do not.  Courts are guided in this process by the four-part test announced in <u>Sell</u>, which we have described as follows:

> First, the government must show that "important governmental interests are at stake" and that special circumstances do not sufficiently mitigate those interests. <u>Sell</u>, 539 U.S. at 180. Second, involuntary medication must significantly further the government's interests by making it "substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel" at trial. <u>Id.</u> at 181. Third, the involuntary medication must be necessary to further the government's interests, and less intrusive means must be unlikely to achieve substantially the same results. <u>Id.</u> And last, the court must conclude that the administration of drugs is medically appropriate and in the patient's best medical interests in light of her medical condition. <u>Id.</u>

<u>White</u>, 620 F.3d at 410.  The government must establish each element of this test by clear and convincing evidence.  <u>United States v. Bush</u>, 585 F.3d 806, 814 (4th Cir. 2009).

In applying the <u>Sell</u> test, we note that circuit courts have upheld involuntary medication orders on prior occasions.  <u>See, e.g.</u>, <u>United States v. Green</u>, 532 F.3d 538 (6th Cir. 2008); <u>United States v. Bradley</u>, 417 F.3d 1107 (10th Cir. 2005).  But we have never departed from the recognition that such orders are a tool that must not be casually deployed, for forced medication is a serious intrusion upon the integrity of the individual and the effects of such medication upon body and mind are often difficult to foresee.  <u>See</u> <u>White</u>, 620 F.3d at 422 (Keenan, J., concurring).  While involuntary medication orders may sometimes

9

be necessary, they carry an unsavory pedigree. See Harper, 494 U.S. at 229-30 (describing how forced administration of antipsychotic medication can have "serious, even fatal side effects," such as cardiac dysfunction and tardive dyskinesia, a neurological disorder in 10% to 25% of patients characterized by "uncontrollable movements of various muscles"). With this understanding of the legal framework, we turn now to the application of the Sell test to Chatmon's case.

## III.

### A.

Chatmon argues first that the district court incorrectly deemed his drug trafficking charge a "serious" crime, a ruling that (if correct) gives rise to an important government interest. See Sell, 539 U.S. at 180 ("The Government's interest in bringing to trial an individual accused of a serious crime is important."). Unfortunately for Chatmon, the central consideration when determining whether a particular crime is serious enough to satisfy this factor is the "maximum penalty authorized by statute." United States v. Evans, 404 F.3d 227, 237 (4th Cir. 2005). For example, we held in White that certain offenses were "serious" because they exposed a defendant to a maximum prison term of "over ten years." 620 F.3d at 410-11. That Chatmon has been accused of a serious crime is thus clear

10

because the offense with which he is charged carries the highest possible maximum prison term: life imprisonment. 21 U.S.C. § 841(b)(1)(A). The seriousness of Chatmon's charged offense is also reinforced by the fact that § 841(b)(1)(A) imposes a mandatory minimum of ten years, which rises to twenty years if the defendant has a prior felony drug conviction, as the government contends is true of Chatmon.

Chatmon responds that the maximum statutory prison term for his drug trafficking charge is of no consequence because Sell commands that in order to constitute a "serious crime," the offense must be against "persons" or "property." Appellant's Br. 22. But that is not the law. Indeed, we expressly rejected this argument in Evans, where we held that Sell's mention of serious crimes "against the person or . . . against property" does not "impose[] the additional requirement that the crime also be against either [a] person or property in order to be a 'serious' one." 404 F.3d at 237 n.6. Other circuits agree. See, e.g., United States v. Green, 532 F.3d 538, 550 (6th Cir. 2008). Instead, as we explained in Evans, the Sell Court mentioned crimes against persons and property for the unexceptional purpose of highlighting that those were the type of charges that Sell himself faced. 404 F.3d at 237 n.6.

Finally, Chatmon points to no special circumstance that would mitigate the government's interest in bringing him to

11

trial.  Sell, 539 U.S. at 180.  Chatmon's case, for example, is unlike White because the defendant in that case faced a likely prison sentence of approximately 42-51 months if convicted -- and would have already served more than that amount by the time of trial.  620 F.3d at 418.  Here, by contrast, Chatmon faces a potential mandatory minimum of twenty years if convicted, and has been confined to date for but a fraction of that time -- roughly two and a half years.  Furthermore, as the government notes, this is likely not a case where its interest in prosecuting Chatmon could be assuaged through a civil commitment order because Chatmon has not been found to pose the risk of injury to others necessary to warrant such commitment under 18 U.S.C. § 4246(d).  We therefore reject Chatmon's contention that the government has no important interest at stake in his case.

B.

We turn now to Chatmon's challenge relating to the third Sell factor, the existence of means for restoring a defendant to competency less intrusive than involuntary medication.  539 U.S. at 181.  Appellate courts have reviewed a district court's findings on this factor for clear error.  See, e.g., United States v. Fazio, 599 F.3d 835, 839-40 (8th Cir. 2010).  As relevant here, a district court commits clear error if it takes "an erroneous view of the controlling legal standard" or makes factual findings "without properly taking into account

12

substantial evidence to the contrary." Miller v. Mercy Hosp., Inc., 720 F.2d 356, 361 (4th Cir. 1983).

To start, the district court misapprehended the legal standard. In Sell, the Supreme Court explained that the overarching inquiry with respect to the third factor is whether "involuntary medication is necessary" because "alternative, less intrusive treatments are unlikely to achieve substantially the same results." 539 U.S. at 181. But Sell also contained a specific command that must be met before a district court may answer this inquiry in the affirmative: the court "must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power." Id.; see also, e.g., United States v. Bradley, 417 F.3d 1107, 1115-16 (10th Cir. 2005) (finding third Sell factor satisfied where court entered order requiring defendant to take medication on threat of civil contempt). Of course, this is not tantamount to a requirement that a defendant must be first held in contempt in each and every case. This option would, however, allow the defendant to decline at least for a period of time forcible medication, albeit at the cost of confinement or some other civil sanction.

The district court failed to heed this legal requirement. The court's discussion of less intrusive means at Chatmon's hearing was limited to the summary conclusion that "involuntary

13

drugging would be necessary because there is no less intrusive means shown to be available." The district court entered a written order confirming this ruling a week later, but it was just as brief, declaring simply that "involuntary medication of the defendant is necessary to further the government's interests and any alternative, less intrusive treatments are unlikely to achieve substantially the same result." At no point did the court acknowledge <u>Sell</u>'s requirement that it "must consider" less intrusive means for administering Chatmon medication such as a court order backed by contempt sanctions. We think such consideration requires that the court explain upon remand why less intrusive means would prove ineffectual.

The court also needs to account for evidence of other less intrusive means presented by Chatmon. During the oral hearing before the district court, Chatmon's counsel discussed two alternative means for restoring Chatmon to competency: group therapy and allowing Chatmon to reside in an open population unit rather than solitary confinement. In proposing those alternatives, counsel repeatedly referenced supportive evidence in the record, referring in particular to Ms. DiMisa's deposition testimony regarding Chatmon's improvements upon being admitted into Butner's open unit. The district court nevertheless found no less intrusive means to be available without recognizing this contrary evidence or explaining why it

14

might be insufficient. Of course, a district court need not credit a defendant's evidence or accept his arguments, but its findings should offer some reason why it did not. Here, during oral argument, the government candidly conceded that the district court offered no reasons why Chatmon's alternatives might be unavailing and essentially provided "no rationale" in support of its ruling. See United States v. Francis, 686 F.3d 265, 273 (4th Cir. 2012) ("A court commits clear error when it makes findings 'without properly taking into account substantial evidence to the contrary.'" (quoting Miller, 720 F.2d at 361)).

It is the context of this case that makes supported findings significant. The need for such findings serves typically not as a broad red light upon a judicial disposition but as a blinking yellow. In a matter as sensitive as an involuntary medication order, which trenches upon the elemental individual liberty interest in refusing the invasive administration of mind-altering medication, the need to slow down and consider less intrusive alternatives is important. Put simply, such consideration is necessary to provide this court with assurance that forcible medication orders, while sometimes warranted, will not become a device routinely or casually employed.

Because the district court erred in its analysis of the third Sell factor, we vacate the involuntary medication order

15

and remand for further findings. We remand because the district court remains far better situated than we are to evaluate in the first instance the conflicting evidence concerning the availability and effectiveness of less intrusive means for restoring Chatmon to competency.

Upon remand, we note that the district court should consider, as Sell suggests, the less intrusive option of ordering Chatmon to take his prescribed medication with the backing of civil contempt sanctions. The district court should also consider and evaluate less restrictive means that Chatmon plausibly suggests for restoring him to competency.

For the foregoing reasons, we vacate and remand for further proceedings consistent with this decision.

VACATED AND REMANDED