**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4616**

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

   v.

BASIT JAVED SHEIKH, a/k/a Abdul Basit,

             Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:13-cr-00305-BO-1)

Argued:  May 12, 2016                    Decided:  June 1, 2016

Before WILKINSON, MOTZ, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion in which Judge Wilkinson and Judge Motz joined.

**ARGUED:** Joseph Bart Gilbert, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  John Stuart Bruce, Acting United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Based on his alleged attempt to join al-Nusrah Front, a foreign terrorist organization designated by the Secretary of State as an alias for the terrorist group al-Qa'ida, the United States charged Basit Javed Sheikh in a single-count indictment with violating 18 U.S.C. § 2339B.[1] After Sheikh underwent two separate pretrial competency examinations, the district court concluded that he is incompetent to stand trial and ordered him hospitalized to attempt competency restoration. Thereafter, based on Sheikh's psychiatric evaluation and refusal to cooperate with treatment, the United States moved for permission to involuntarily medicate him to restore competency. In accordance with Sell v. United States, 539 U.S. 166 (2003), the court conducted a hearing on the United States' motion, during which three medical experts testified. The court thereafter determined that involuntary medication is appropriate, but it stayed the order pending Sheikh's anticipated interlocutory appeal, which is the matter now before us. For the following reasons, we affirm.

---

[1]Section 2339B(a)(1) provides in pertinent part: "Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both. . . ." The statute was amended in 2015 to change the statutory maximum from 15 to 20 years, but Sheikh was indicted in 2013, and he faces a 15-year statutory maximum.

The parties agree that Sheikh suffers from schizophrenia and is incompetent to stand trial unless he is medicated. "The question of when the government may involuntarily administer psychotropic drugs to a defendant for the purpose of rendering him competent to stand trial entails a difficult balance between the defendant's interest in refusing mind-altering medication and society's interest in bringing the accused to trial. The Supreme Court recognized the weighty concerns on both sides of this balance in Sell, noting that while individual defendants possess a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs, so too does the government possess an important interest in protecting through application of the criminal law the basic human need for security." United States v. Chatmon, 718 F.3d 369, 373 (4th Cir. 2013) (internal punctuation altered).

To resolve this question, courts apply a four-part test established by Sell. Under this test, the government must prove each of the following: (1) important governmental interests are at stake and special circumstances do not sufficiently mitigate

those interests;[2] (2) involuntary medication will significantly further these interests by making it substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense; (3) involuntary medication is necessary to further these interests and less intrusive means are unlikely to achieve substantially the same results; and (4) the administration of drugs is medically appropriate and in the defendant's best medical interests in light of his medical condition. <u>Sell</u>, 539 U.S. at 180-81.

We have previously recognized that <u>Sell</u> orders "are a tool that must not be casually deployed, for forced medication is a serious intrusion upon the integrity of the individual and the effects of such medication upon body and mind are often difficult to foresee." <u>Chatmon</u>, 718 F.3d at 374. To minimize the risk of an erroneous <u>Sell</u> decision, "we have set a deliberately high standard for the government to satisfy before it may forcibly medicate solely to render an inmate competent to stand trial." <u>United States v. Watson</u>, 793 F.3d 416, 420 (4th Cir.

---

[2]"While the ultimate burden of proving an important interest in prosecution always remains with the Government, we look to the defendant to demonstrate that the special circumstances of his case undermine the Government's interest once it is established that he stands accused of a serious crime." <u>United States v. Mikulich</u>, 732 F.3d 692, 699 (6th Cir. 2013).

5

2015). Thus, when an issue involves fact-finding by the district court, we require the government to prove facts by clear and convincing evidence. Id. Additionally, we have emphasized that in evaluating the government's case for involuntary medication under Sell, the focus must be specifically directed on the defendant: i.e., the test is "not whether a proposed treatment plan is likely to work in general, but whether it is likely to work as applied to a particular defendant." Id. at 425.

Because the first Sell factor involves a legal question, we review the district court's ultimate decision on that factor de novo and any subsidiary factual determinations for clear error. United States v. White, 620 F.3d 401, 410 (4th Cir. 2010). We review the remaining three Sell factors – which are factual in nature - for clear error. Id.

II

At the Sell hearing, the United States presented three witnesses, each of whom was qualified as an expert: Dr. Brianna Grover, Dr. Angela Walden-Weaver, and Dr. Alton Williams.[3] Generally speaking, these witnesses testified that Sheikh suffers from schizophrenia, his condition will likely

---

[3]At the time of their evaluation of Sheikh, Dr. Walden-Weaver was a forensic psychologist at FMC-Butner, Dr. Williams was an FMC-Butner staff psychiatrist, and Dr. Grover had a Masters degree in clinical psychology and was engaged in an internship at FMC-Butner as part of her doctoral education.

6

deteriorate over time without treatment, his lack of cooperation has hampered attempts to treat him, and he should be involuntarily medicated with anti-psychotic medication. The United States also introduced the 15-page forensic evaluation prepared by these witnesses, which detailed their diagnosis of Sheikh, their attempts to treat him, and their recommendation of involuntary medication. Sheikh cross-examined the United States' witnesses but did not present any other witnesses.

In the Sell order, the district court began its analysis by summarizing the witnesses' testimony and explaining the controlling legal principles. The court then prefaced its application of the Sell test by noting that the "crux of this case is whether the government has a sufficiently important interest in prosecuting Mr. Sheikh such that interference by forced medication with his constitutionally protected liberty interest is justified, as measured against any special circumstances weighing against the asserted important governmental interests in bringing him to trial." J.A. 149.

Addressing the first Sell factor, the court found that the crime charged is serious because it involves terrorism and, if convicted, Sheikh faces a 15-year maximum sentence. The court thus held that "there is no doubt of the government's important interest in bringing Mr. Sheikh to trial." Id. at 149-50. The court then correctly recognized that special circumstances can

7

mitigate the United States' important interest, and it considered the fact that Sheikh had been in custody for approximately 23 months. The court noted that 23 months "is not an insignificant amount of time in custody" as a general matter, but it found that 23 months "is not significant in light of . . . the estimated sentences" Sheikh faces if convicted. Id. at 151.

The court further considered as a special circumstance the fact that Sheikh would likely be recommended for involuntary civil commitment under 18 U.S.C. § 4246 if involuntary medication was not ordered.[4] Noting, for that reason, that the chance that Sheikh would be released into the community and the United States would lose its ability to prosecute him is "minimal," J.A. 151, the court concluded that the possibility of civil commitment weighs against the United States' prosecution interest. However, the court also concluded that the civil commitment possibility "alone does not sufficiently mitigate that interest, particularly given the nature of the charges here." Id. at 152.

Turning to the second Sell factor, the court found that the record "convincingly demonstrates" that the United States proved

---

[4]Dr. Walden-Weaver testified that if Sheikh is not medicated, she would recommend his evaluation for § 4246 civil commitment.

8

that the administration of the drugs would be substantially likely to render Sheikh competent to stand trial and that the drugs were substantially unlikely to have side effects that would significantly interfere with his ability to assist in his own defense. J.A. 152. The court pointed to Dr. Williams' testimony that antipsychotic drugs, including injectable Haldol, are the "normal course of treatment for psychotic disorders, specifically schizophrenia, and enjoy high rates of success." Id. The court acknowledged that it is "impossible to predict the occurrence of side effects with 100% accuracy," but it noted that Dr. Williams' testimony "established that the side effects are rare and most are treatable." Id. The court further stated that "the experts at FMC-Butner . . . reported several contingency plans to address any side effects that arise, including decreases in medication dosage, use of adjunctive medications to manage side effects, or treatment with alternative antipsychotic medication." Id.

Regarding the third Sell factor, the court found that the United States proved that involuntary medication is necessary to further its interests and less intrusive means are unlikely to achieve substantially the same results. The court credited Dr. Williams' testimony that Sheikh's inability and/or unwillingness to communicate with anyone at the hospital, including his therapists, made alternative treatments unlikely to be

9

effective. The court also found that medication is the most effective treatment for schizophrenia, but Sheikh has refused to take medication voluntarily.

Finally, on the fourth Sell factor, the court found that the United States proved that its proposed involuntary treatment is medically appropriate. The court acknowledged that different antipsychotic drugs may have different side effects and different success rates, but it credited Dr. Williams' testimony that antipsychotics are a typical treatment for schizophrenia and that Haldol was medically appropriate in Sheikh's case. As the court explained: "The rates of side effects testified to by Dr. Williams do not make administration thereof medically inappropriate, particularly given the expert testimony that established that any adverse side effects that arise would be promptly treated or addressed with medication changes." J.A. 154. The court also specifically addressed the individualization of the protocol to Sheikh, discussing Dr. Williams' testimony that Haldol was the most appropriate drug because Risperdol, which has advantages, requires ongoing laboratory testing to which Sheikh will not consent.

Having thus concluded that the United States met its burden under Sell, the court ordered involuntary medication with conditions tailored to Sheikh's case. As noted, the court stayed its order to permit Sheikh to pursue this appeal.

10

In challenging the Sell order, Sheikh contends that the government failed to establish three of the four Sell factors.[5] Considering the factors out of order, we initially reject Sheikh's contention that the government failed to meet its burden of proving the second and fourth factors by clear and convincing evidence. Based on our careful review of the parties' arguments and the record, we discern no clear error in the district court's findings that (1) involuntary medication will significantly further the United States' prosecution interests by making it substantially likely to render Sheikh competent to stand trial and substantially unlikely to have side effects that will interfere significantly with the his ability to assist counsel in conducting a defense and (2) the administration of drugs is medically appropriate and in his best medical interests in light of his medical condition.[6] The court applied the proper

---

[5]Sheikh does not challenge the district court's finding on the third factor – i.e., involuntary medication is necessary to further the United States' interests and less intrusive means are unlikely to achieve substantially the same results. See Brief for Appellant, at 19 ("The government has failed to establish three of the four prongs required by Sell.").

[6]The United States notes in its brief that after the Sell hearing, prison medical staff administered two separate emergency doses of medicines because of Sheikh's incoherent yelling, acute agitation, and resistance to a scheduled cell (Continued)

legal principles and adequately explained its findings, which we believe are supported by the record. See <u>Concrete Pipe and Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.</u>, 508 U.S. 602, 623 (1993) (explaining that the clearly erroneous standard "is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed'"); <u>Chatmon</u>, 718 F.3d at 375 (explaining that a district court commits clear error if it takes an erroneous view of the controlling legal standard or makes findings without properly taking into account substantial contrary evidence).

We now turn to the first <u>Sell</u> factor. Sheikh correctly does not contest the district court's determination that the United States has an important interest in prosecuting him. In <u>Sell</u>, the Court stated that the government's "interest in bringing to trial an individual accused of a <u>serious</u> crime is important," 539 U.S. at 180 (emphasis added), and we have previously recognized that "the central consideration" when determining whether a particular crime is serious enough to satisfy this factor is the maximum penalty authorized by the applicable statute, <u>Chatmon</u>, 718 F.3d at 374. Although we have not

---

rotation. According to the United States, in both instances Sheikh's mental state partially improved, and no immediate side effects were apparent.

12

announced a "hard and fast rule," our precedent establishes that a crime carrying a statutory maximum of 10 years or more is "serious" in this context. White, 620 F.3d at 410. Sheikh faces a statutory maximum of 15 years, which unquestionably makes his crime serious for purposes of the Sell test.

In light of the United States' important prosecutorial interest, Sheikh argues that the district court erred by failing to conclude that the possibility of his civil commitment under § 4246 is a special circumstance that negates the United States' interest. As Sheikh explains, he "faces the potential of indefinite commitment, functionally a life sentence, through civil commitment proceedings." Brief for Appellant, at 25. For this reason, Sheikh asserts that the United States "need not be concerned that [he] will be released to the public." Id. Sheikh further asserts that the United States does not need a conviction against him to demonstrate the seriousness of the crime or to deter others because "[m]uch publicity has resulted from the government's prosecutions throughout the United States of others who have attempted to travel to Syria and Iraq based on their distorted interpretation of the Islamic faith." Id. at 26.

The Sell Court held that courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of

13

that interest." 539 U.S. at 180. Moreover, the Court recognized that the possibility of civil commitment may lessen the government's interest in prosecution, noting that a defendant's "failure to take drugs voluntarily . . . may mean lengthy confinement in an institution for the mentally ill — and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." Id. Continuing, however, the Court explained: "We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution." Id.

The district court concluded that the possibility of civil commitment weighs against the United States' prosecution interest, but that possibility "alone does not sufficiently mitigate that interest, particularly given the nature of the charges here." J.A. 152. In making this determination, the court tended towards the assumption that Sheikh will be civilly committed if he is not involuntarily medicated, noting there is "minimal" chance that he would be released into the community or that the government would lose its ability to prosecute him.

14

J.A. 151. Sheikh similarly frames his argument, confidently asserting that because of the possibility of civil commitment, the United States "need not be concerned that [he] will be released to the public." Brief of Appellant, at 25.[7] However, whether Sheikh is likely to meet the requirements for civil commitment if he is not involuntarily medicated is a matter that has yet to be litigated, and the record before us understandably does not provide much guidance to predict the outcome of such a determination. See generally Mikulich, 732 F.3d at 699 ("A defendant is not required to manifest an absolute certainty of future civil confinement in order to undermine the Government's interest in prosecution. However, this does not mean that uncertainty will carry the day.") (emphasis in original).

Even if we assume for purposes of our decision that there is a fair possibility of Sheikh being civilly committed if he is not involuntarily medicated, we conclude that the United States' prosecutorial interest is not sufficiently mitigated to preclude involuntary medication. In White, we stated that in considering the special circumstances issue, one pertinent factor is the "nature of the crime," and "[n]ot every serious crime is equally serious." 620 F.3d at 413, 419. In addition to the fact that Sheikh faces a 15-year statutory maximum, which is a significant

_____

[7]At oral argument, Sheikh's counsel stated that he is confident Sheikh will, in fact, be civilly committed.

15

punishment, we find that the United States has a particularly strong interest in prosecuting this case based on the nature of the crime charged.

"[T]he Government's interest in combating terrorism is an urgent objective of the highest order." Holder v. Humanitarian Law Project, 561 U.S. 1, 28 (2010). "Terrorism, whether real or perceived, threatens our need for security," United States v. Onuoha, --- F.3d ---, --- (9th Cir. 2016), and "[t]he real risks, the real threats, of terrorist attacks are constant and not likely soon to abate," Boumediene v. Bush, 553 U.S. 723, 793 (2008). The pertinent criminal statute - § 2339B - represents "the considered judgment of Congress and the Executive that providing material support to a designated foreign terrorist organization — even seemingly benign support — bolsters the terrorist activities of that organization." Holder, 561 U.S. at 36.

Given the importance of the United States' interest in prosecuting Sheikh, we cannot agree with Sheikh that his possible civil commitment is sufficient to override that interest. Sheikh is certainly correct that if he is civilly committed, he would not be released into the community. Although that fact serves one aspect of the United States' prosecutorial interest, there is a more significant aspect that makes Sheikh's trial important. Specifically, Sheikh's prosecution for the

16

alleged conduct "conveys a message about its seriousness and its consequences." United States v. Bush, 585 F.3d 806, 815 (4th Cir. 2009); see also Onuoha, --- F.3d at --- ("[G]eneral deterrence for the benefit of society is served when a person is convicted of a serious crime, thus deterring others from making the same mistake."). Sheikh attempts to downplay this interest, arguing that the United States has prosecuted other individuals for similar attempts to support terrorist organizations. Regardless of any other similar prosecutions the United States may have conducted, we are not persuaded that those prosecutions diminish the importance of this one.

IV

We recognize that involuntarily medicating a defendant for trial competency purposes is a "drastic resort," White, 620 F.3d at 422, and the instances in which such treatment is permissible "may be rare," Sell, 539 U.S. at 180. Given the importance of the United States' interest in prosecuting this case, the evidentiary record presented, and the district court's careful fact-finding, we conclude that this is one of those instances. Accordingly, we affirm the Sell order.

AFFIRMED