**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 20-4537**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER LEWIS TUCKER,

Defendant-Appellant.

---

**No. 21-4166**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER LEWIS TUCKER,

Defendant-Appellant.

---

**No. 22-4025**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER LEWIS TUCKER,

Defendant-Appellant.

—————————————

**No. 22-4026**

—————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHRISTOPHER LEWIS TUCKER,

Defendant-Appellant.

—————————————

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Thomas D. Schroeder, Chief District Judge. (1:17-cr-00221-TDS-1)

—————————————

Argued: January 27, 2023                               Decided: February 24, 2023

—————————————

Before GREGORY, Chief Judge, and WILKINSON and HEYTENS, Circuit Judges.

—————————————

Affirmed by published opinion. Judge Heytens wrote the opinion, in which Chief Judge Gregory and Judge Wilkinson joined.

—————————————

**ARGUED:** Eric J. Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** G. Alan DuBois, Federal Public Defender, Jaclyn L. Tarlton, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Sandra J. Hairston, United States Attorney, Eric L. Iverson, Assistant United States

2

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

———————

TOBY HEYTENS, Circuit Judge:

This case involves a criminal defendant who has been declared mentally incompetent to stand trial and languished in pretrial custody for more than five years. The district court found that involuntary medication is substantially likely to render the defendant competent and ordered a final extension of confinement to permit that medication to work. We affirm.

I.

The Fifth Amendment declares no person "shall be . . . deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. The issues in this case concern several overlapping strands of that guarantee.

A criminal prosecution may not proceed unless the defendant is competent. See *Pate v. Robinson*, 383 U.S. 375, 378 (1966). For constitutional purposes, the test "is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quotation marks omitted). A person who is not competent may not be tried for—or plead guilty to—a crime. See *id.* at 391.

The Due Process Clause also limits the government's efforts to restore a person's competency. On the one hand, "the Constitution permits the [g]overnment involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial." *Sell v. United States*, 539 U.S. 166, 179 (2003). But because doing so implicates "a significant constitutionally protected

4

liberty interest," the Due Process Clause imposes restrictions as well. *Id.* at 178 (quotation marks omitted). Under *Sell*'s four-factor test, involuntary medication may be ordered "only" if: (1) "important governmental interests are at stake"; (2) "involuntary medication will significantly further those . . . interests"; (3) "involuntary medication is necessary to further those interests"; and (4) "administration of the drugs is medically appropriate." *Id.* at 179–81 (emphasis removed). "The government must establish each element of this test by clear and convincing evidence." *United States v. Chatmon*, 718 F.3d 369, 374 (4th Cir. 2013).

Similarly, the Due Process Clause allows civil commitment to restore a defendant's competency but "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). For that reason, a person charged "with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* "Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." *Id.*

Congress has enacted procedures for implementing *Jackson*'s requirements. At any time before sentencing, a court may hold a hearing "to determine the mental competency of the defendant." 18 U.S.C. § 4241(a). If the court finds by a preponderance of the evidence that the defendant "is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the

5

defendant to the custody of the Attorney General," who "shall hospitalize the defendant for treatment in a suitable facility." § 4241(d).

Consistent with the Supreme Court's decision in *Jackson*, however, such periods of hospitalization must be limited. The defendant may initially be hospitalized "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." § 4241(d)(1). The defendant may then be hospitalized "for an additional reasonable period of time until" the "earlier" of two events. § 4241(d)(2). The first is if the defendant's "mental condition is so improved that trial may proceed," so long as "the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." § 4241(d)(2)(A). The second is if all "pending charges . . . are disposed of according to law." § 4241(d)(2)(B).

## II.

Christopher Lewis Tucker was arrested almost six years ago and has been in federal custody ever since. Under the controlling indictment, Tucker is charged with two counts of attempting to persuade people he believed to be minors to produce child pornography; one count of transporting or shipping child pornography; one count of receiving child pornography; and one count of possessing a firearm while being addicted to a controlled substance. The first two counts carry sentences of "not less than 15 years nor more than 30 years." 18 U.S.C. § 2251(e). The other two child pornography offenses authorize sentences of "not less than 5 years and not more than 20 years," § 2252A(b)(1), with the firearms

6

offense having a potential sentence of "not more than 15 years," § 924(a)(8). Following any incarceration, the four child pornography offenses would each require a supervised release term of "not less than 5" years and up to life. § 3583(k).

In August 2017—three months after Tucker was arrested—his lawyer moved to have him declared mentally incompetent. In September 2017, the district court found Tucker incompetent and committed him to the custody of the Attorney General.

Tucker spent the next seven months being evaluated at correctional institutions in Chicago and San Diego. In May 2018, the district court held another hearing, at which it recommitted Tucker to the custody of the Attorney General for a restoration of competency. At no point before or during that hearing did Tucker's lawyer "object to the length of [Tucker's] evaluation" or "challenge the court's authority to order a subsequent period." JA 954 n.4. To the contrary, defense counsel "agreed with . . . the court's intention to commit Tucker to the custody of the Attorney General for restoration of competency." JA 954.

In June 2018, Tucker was admitted to the Federal Medical Center in Butner, North Carolina. Just over five months later, a forensic psychologist submitted a report concluding Tucker was still not competent to stand trial but there was "a substantial likelihood . . . Tucker [could] be restored to competency in the foreseeable future with [a] combination of" medication and individualized treatment. JA 955. The forensic psychologist thus "requested an additional period of evaluation and treatment to continue restoration efforts." JA 956. Once again, Tucker's counsel "did not object," and the district court ordered "that Tucker's period of restoration of competency be extended." JA 956.

7

In May 2019, the forensic psychologist submitted another report detailing the efforts to restore Tucker's competency. That report described Tucker as only intermittently compliant with his medication regimen but stated that his symptoms "responded well to medication treatment with antipsychotics and antidepressants in the past" and there was "substantial probability that his symptoms would be further attenuated with ongoing medication treatment." JA 957. The report said Tucker was "right at the threshold of competency, and likely would have been restored had he complied with medication treatment." JA 958. The report recommended another period of evaluation and treatment, as well as an order permitting the involuntary administration of medication should Tucker continue to resist taking it.

The government requested an involuntary medication order and the district court set a hearing. Before that hearing could take place, however, Tucker's mother hired a new lawyer to represent Tucker, who requested a delay. The district court reset the hearing for August 30, 2019.

Before the hearing, the government moved for a further extension of the time for evaluation and treatment and withdrew its request for an involuntary medication order. On August 12, 2019, Tucker filed a written objection to that motion, arguing that, absent a request for involuntary medication, there was no basis for his continued detention. Two days later, the government renewed its request for an involuntary medication order, citing a report from the medical facility's chief psychiatrist that Tucker had "firmly and unequivocally told us . . . he was stopping all of his psychiatric medications going forward" and was insisting that he was "competent to stand trial." JA 961. The hearing was delayed

again after Tucker had "a physical altercation with another inmate," and his attorneys requested a continuance. JA 962.

The district court ultimately held two hearings in September 2019, at which three medical professionals testified, two for the government and one for Tucker. On October 22, 2019, the district court issued a 49-page opinion finding "the Government ha[d] shown, by clear and convincing evidence, that involuntary medication under *Sell* is appropriate and that an additional [four-month] period to restore Tucker to competency through mental health treatment is warranted." JA 545–46.

Tucker filed a notice of appeal and asked the district court to stay its order pending that appeal. The district court granted Tucker's request, staying its order "until such time as Defendant's appeal to the Fourth Circuit is resolved." JA 548. Almost two years later, this Court granted the government's motion to remand the case to the district court for further consideration of "whether the administration of drugs, as currently prescribed, [wa]s substantially likely to render Tucker competent to stand trial." *United States v. Tucker*, No. 19-4805, 2021 WL 4352382, at *2 (4th Cir. 2021) (per curiam). This Court's mandate issued on October 18, 2021.

After the case was remanded, Tucker moved to dismiss the indictment and argued for his immediate release. The district court conducted another hearing, at which it again heard testimony from the chief psychiatrist. Less than a month later, the court issued a 42-page opinion concluding an involuntary medication order was appropriate and granting the government "four months within which to" restore Tucker's competency. JA 987. The

9

district court also stayed its involuntary medication order "until such time as [Tucker's] appeal to the Fourth Circuit is resolved." JA 987.

Tucker appeals anew, challenging both the involuntary medication order and his continued detention. We have appellate jurisdiction to consider both under 28 U.S.C. § 1291. See *Sell*, 539 U.S. at 175–77 (appeals from involuntary medication orders fall within the collateral order doctrine); *United States v. Curbow*, 16 F.4th 92, 115 (4th Cir. 2021) (appeals from commitment order entered under 18 U.S.C. § 4241(d)(2) also fall within the collateral order doctrine).[1]

### III.

Our role is confined by the applicable standards of appellate review. The first *Sell* factor—whether "important governmental interests are at stake," 539 U.S. at 180 (emphasis removed)—presents "a legal conclusion that we review de novo, although we review any factual findings relevant to this legal determination for clear error." *United States v. Evans*, 404 F.3d 227, 236 (4th Cir. 2005) (citation omitted). In contrast, "[t]he remaining three [*Sell*] factors"—which seek to predict the likely success of an involuntary medication order and to assess alternatives—"present factual questions subject to clear error review." *United States v. White*, 620 F.3d 401, 410 (4th Cir. 2010). The district court's determination that Tucker's continued hospitalization is reasonable under

---

[1] Tucker also filed several pro se notices of appeal that have been consolidated with his counseled appeal in No. 20-4537. We also have jurisdiction over these appeals under the collateral order doctrine. We conclude any challenge to the district court's competency order is forfeited because it was not raised in Tucker's opening brief. See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). Tucker's remaining pro se challenges are subsumed by our reasons for rejecting the arguments raised by his attorneys.

10

18 U.S.C. § 4241(d)(2) is also "a finding of fact that we review for clear error." *Curbow*, 16 F.4th at 109.

## A.

We hold the district court committed no reversible error in entering an involuntary medication order. Tucker challenges two facets of the district court's decision. First, Tucker contends the district court failed to properly consider that he has already spent more than five years in federal custody. Second, Tucker asserts the district court clearly erred in concluding the government's proposed treatment plan is likely to restore his competency. We are not persuaded by either argument.

### 1.

The first *Sell* factor asks whether "*important* governmental interests are at stake." 539 U.S. at 180. Not surprisingly, the Supreme Court has emphasized the government has an "important" interest "in bringing to trial an individual accused of a serious crime." *Id.* At the same time, "[c]ourts . . . must consider the facts of the individual case in evaluating the [g]overnment's interest in prosecution," including whether "[s]pecial circumstances may lessen the importance of that interest" in a particular situation. *Id.*

"[T]he central consideration when determining whether a particular crime is serious enough to satisfy [the first *Sell*] factor is the 'maximum penalty authorized by statute.'" *Chatmon*, 718 F.3d at 374 (quoting *Evans*, 404 F.3d at 237). This Court has declared it "beyond dispute" that the government has "an important interest in trying a defendant charged with a felony carrying a maximum punishment of 10 years imprisonment." *Evans*, 404 F.3d at 238. Here, the offenses Tucker is charged with carry maximum penalties

11

ranging from 15 to 30 years of imprisonment. See pp. 5–6, *supra*.

The circumstances of this case, taken as a whole, do not eliminate the government's otherwise substantial interest in prosecuting Tucker. Tucker emphasizes he has already been detained for more than five years. He also notes that, before he was even arrested, the government agreed to let him plead guilty to a single count of transporting child pornography—an offense whose penalty range would have been between five and 20 years of imprisonment. Had he ultimately decided to plead guilty, Tucker argues, "he would likely have had an advisory Guidelines range at or near the minimum sentence of 60 months." Tucker Br. 43.

Without question, the fact that Tucker "has already been confined for a significant amount of time" cuts against the government. *Sell*, 539 U.S. at 180. Tucker is also right that this Court has considered the length of a defendant's "likely prison sentence" in assessing whether an extended period of pretrial detention undermines "the government's interests in protecting the public, in general and specific deterrence, and in obtaining just punishment." *White*, 620 F.3d at 413, 415. And although Tucker cites no decision of any court that has considered evidence of previous potential plea agreements in assessing the strength of the government's interest, we need not—and do not—treat such evidence as irrelevant to the *Sell* analysis.

Instead, we hold only that—under "the facts of th[is] individual case"—the government retains a substantial interest in prosecuting Tucker. *Sell*, 539 U.S. at 180. Tucker is charged with five felony offenses, two of which carry *minimum* sentences of 15 years of imprisonment. See pp. 5–6, *supra*. Unlike *White*, then, this is not a situation where

12

Tucker's pretrial detention will last "*considerably longer* than [his] likely sentence." 620 F.3d at 418.

In addition, the offenses with which Tucker is charged are not comparable to the purely financial crimes at issue in *White*. See 620 F.3d at 405 (describing charges). Despite often being shorthanded as "child pornography," this Court has recently emphasized that the term "child sexual abuse material" more "accurately reflect[s] what is depicted—the sexual abuse and exploitation of children." *United States v. Morehouse*, 34 F.4th 381, 384 n.1 (4th Cir. 2022) (quotation marks omitted). Tucker is not only charged with knowingly possessing or transferring such materials. Rather, Tucker is accused of twice seeking to convince "a person whom [he] believed to be a minor to engage in . . . sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct, knowing and having reason to know that such visual depiction[] would be transported" in interstate or foreign commerce. JA 81. While "[n]ot every serious crime is equally serious," *White*, 620 F.3d at 419, the ones charged here are grave by any measure.

Finally, this is not a situation when "[t]he defendant's failure to take drugs voluntarily" will result in "lengthy confinement in an institution for the mentally ill." *Sell*, 539 U.S. at 180. To some extent, that fact cuts both for and against Tucker because the reason he may be ineligible for indefinite civil commitment is that the government cannot show his release would create a substantial danger to others. See Oral Arg. 32:10–33:46; see also 18 U.S.C. §§ 4246(d), 4247(a)(5), 4248(d). At the same time, however, the unlikelihood of future confinement absent an involuntary medication order means "the risks that ordinarily attach to freeing without punishment one who has committed a serious

13

crime" are not eliminated. *Sell*, 539 U.S. at 180. Here, such risks would notably include an inability to provide "appropriate monitoring" through a period of supervised release. *United States v. Bush*, 585 F.3d 806, 815 (4th Cir. 2009).

2.

We also conclude the district court committed no clear error in finding an involuntary medication order would significantly further the government's interest in prosecuting Tucker. Under the second *Sell* factor, the government must show "administration of the drugs is substantially likely to render the defendant competent to stand trial" *and* that administration of such drugs "is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." *Sell*, 539 U.S. at 181. "[T]he government must not only show that a treatment plan works on a defendant's type of mental disease *in general*, but that it is likely to work on this defendant *in particular*." *Bush*, 585 F.3d at 816.

Tucker's argument has two parts. First, Tucker asserts the district court "basically ordered the same medication course (with a slight dosage alteration)" that had been tried previously without an involuntary medication order. Tucker Br. 37. Second, Tucker insists "we know" the treatment plan ordered by the district court "would be unlikely to work" for him "because *it ha[s] already been tried and failed.*" *Id.* at 38.

Had we been sitting as the court of first instance, we might have agreed with Tucker on these points. But the parties competing arguments delve deep into the particulars of Tucker's extensive medical history and the intricacies of treating a severe mental illness—areas where the district court's comparative expertise is at its zenith and ours its nadir.

14

What is more, the ultimate question before the district court was not what happened in the past or why. Instead, as the government correctly observes, the district court was tasked with "evaluating Tucker's *current* prognosis and the likelihood that the *currently recommended* treatment would render him competent." U.S. Br. 36. Having scrutinized the parties' arguments and the record, we are not left "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). We thus hold the district court committed no reversible error in finding the second *Sell* requirement was satisfied.

## B.

We also conclude the district court made no clear error in finding Tucker's current confinement "reasonable" under 18 U.S.C. § 4241(d)(2)(A) and thus denying his motion for immediate release.[2]

In assessing whether a period of confinement can be justified, "precedent and the governing statutory framework require the [g]overnment to act with reasonable speed" rather than "in the quickest possible manner." *Curbow*, 16 F.4th at 112. Thus, a commitment period under Section 4241(d)(2)(A) is generally reasonable so long as it is not attributable to more than "reasonable explainable administrative delays." *United States v. Wayda*, 966 F.3d 294, 308 (4th Cir. 2020); see Tucker Br. 25 (acknowledging *Curbow* and *Wayda* provide the governing standard). In addition, because "the proper time and place to contest [any] alleged unreasonable delays" is at the time of the relevant delay, a defendant's

---

[2] Although Tucker asserts his continued detention also violates the Due Process Clause, he develops no separate argument on that point.

failure to lodge a timely objection to a particular period forfeits or waives any later challenge. See *Curbow*, 16 F.4th at 115–16 & n.11. This remains true even if the defendant "has been deemed mentally incompetent and unable to understand and assist in the proceedings against him," so long as the defendant "has continuously been represented by counsel responsible for choosing his legal strategy and protecting his interests." *Id.* at 117.

Under *Curbow*, we must begin by identifying which—if any—periods we may properly review. And, like the district court, we conclude Tucker has forfeited (if not waived) any challenge to most of his confinement. See *United States v. Olano*, 507 U.S. 725, 733 (1993) (describing the difference between waiver and forfeiture).

Tucker acknowledges he made no objection to his detention until August 12, 2019. At that point, the district court was scheduled to hold a hearing on August 30—just 18 days later. That hearing, however, was delayed for several more weeks at Tucker's request, before ultimately being held on dates suggested by Tucker's counsel. Less than a month after the final hearing, the district court issued a comprehensive order finding involuntary medication was warranted and ordering Tucker detained for four months to carry out such treatment. The next day, Tucker moved to stay the involuntary medication order pending appeal, and that stay has been in place ever since. After this Court remanded for further proceedings, the district court scheduled a new evidentiary hearing for 30 days later, but delayed the hearing for 16 additional days "at the request of both parties." JA 967 n.16. Once the remand hearing was held, the district court issued a new decision less than a month later, concluding involuntary medication remained appropriate and ordering another four-month period of confinement to facilitate efforts to restore Tucker's competency.

16

Since then, the case has been before this Court on Tucker's various appeals. See note 1, *supra*.

Under the circumstances of this case, we conclude the district court did not clearly err in finding Tucker's continued detention was reasonable. Even were we to grant Tucker's premise that he has continually objected to his detention since August 2019, the vast majority of that time occurred after the district court concluded (and then re-concluded) an involuntary medication order was appropriate and while Tucker pursued two rounds of appeals to this Court. Tucker was, of course, well within his rights to challenge the district court's involuntary medication order and seek a stay of that order until its lawfulness was resolved. See *Sell*, 539 U.S. at 177 (emphasizing the "severity of the intrusion and corresponding importance of the constitutional issue[s]" raised by involuntary medication orders). At the same time, the delays associated with those appeals do not fatally undermine the district court's finding that an additional period of commitment is reasonable to give its involuntary medication order an opportunity to work.

*        *        *

Involuntary medication orders "carry an unsavory pedigree," and prolonged pretrial detention of a presumptively innocent person "is serious business." *Chatmon*, 718 F.3d at 374 (first quote); *United States v. Williams*, 53 F.4th 825, 832 (4th Cir. 2022) (second quote). Given the deferential standards of review, we conclude the district court committed no reversible error in deciding an involuntary medication order was warranted and finding it appropriate to grant one final four-month period of confinement to attempt to restore Tucker's competency. We emphasize, however, that "[a]t some point [the government]

17

can't keep trying and failing and trying and failing, hoping to get it right," JA 481, and we trust no further extensions will be sought once the current appeal is finally resolved. The orders of the district court are

*AFFIRMED*.